**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 23-cr-105** |
| | § | |
| **MERTROY HARRIS,** | § | |
| | § | |
| | § | |
| | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas, Kelly Zenon-Matos, Assistant United States Attorney and Jodi Anton, Department of Justice Trial Attorney, and the defendant, Mertroy Harris ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1.     Defendant agrees to plead guilty to the sole count of the Indictment which charges the Defendant with causing death through the use of a firearm during and in relation to the murder in aid of racketeering of S.J., in violation of Title 18, United States Code, Sections 924(j)(1) and 2. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2.   The statutory maximum punishment for Count One of the Indictment is up to life imprisonment or death, a term of supervised release of not more than five years, and a $250,000.00

fine. The Attorney General has authorized the United States not to seek the death penalty against Defendant. Accordingly, the maximum penalty in this case is life imprisonment. Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to five years without credit for time already served on the term of supervised release prior to such violation on each case. *See* Title 18, United Stated Code, sections 3559(a) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3.    Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4.    Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from

2

Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Waiver of Appeal, Collateral Review, and Statute of Limitations**

5.  Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6.  Defendant also agrees that should the conviction following the Defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this agreement) may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this agreement and the commencement or reinstatement of such prosecution. It is the intent of this agreement to waive all defenses based

on the statute of limitations with respect to any prosecution that is not time-barred on the date that this agreement is signed.

7.    In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court.  Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court.   The United States does not make any promise or representation concerning what sentence the Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court.  *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8.    Defendant understands and agrees that each and all waivers contained in the agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

9.    The United States agrees to the following:

(a)    If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

4

**Agreement Binding – Southern District of Texas and VCRS Only**

10.   The United States Attorney's Office for the Southern District of Texas and the Violent Crime and Racketeering Section ("VCRS") of the Department of Justice agree that they will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the Indictment.   This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, VCRS, and Defendant.   It does not bind any other United States Attorney's Office or any other section of the United States Department of Justice.   The United States Attorney's Office for the Southern District of Texas and VCRS will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

**United States' Non-Waiver of Appeal**

11.   The United States reserves the right to carry out its responsibilities under guidelines sentencing.   Specifically, the United States reserves the right:

(a)   to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)   to set forth or dispute sentencing factors or facts material to sentencing;

(c)   to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)   to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)   to appeal the sentence imposed or the manner in which it was determined.

5

**Sentence Determination**

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

**Rights at Trial**

13. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

    (a)    If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the Court all agree;

    (b)    At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear

6

voluntarily, he could require their attendance through the subpoena power of the court; and

(c)    At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify.   However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

14.   Defendant is pleading guilty because he is in fact guilty of the charge contained in the Indictment.   If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt.   The following facts, among others, would be offered to establish Defendant's guilt:

### 103-Gang

The Defendant and his codefendants Richards, Nicks, Watson, Christopher, and Erskin, along with others known and unknown, were members and associates of the 103 Gang, a criminal organization whose members and associates engaged in acts involving murder and drug trafficking. The Defendant along with codefendants Watson, Erskin, and Christopher were directed by 103-gang members and leaders and codefendants, Richards and Nicks, to conduct the drive by shooting that led to the death of S.J. and the shooting of W.F.   The shooting was planned as part of the gang war between 103-gang and its rivals.   Defendant, and other coconspirators, planned and conducted the shooting to maintain or increase their position within 103-gang.

The 103 gang, including its leadership, membership, and associates, constituted an enterprise, as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the Enterprise" or "103-gang"). The Enterprise constituted an ongoing organization whose members and associates function as a continuing unit for a common purpose

of achieving the objectives of the Enterprise. 103-gang, through its leaders, members, and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, in violation of Texas state law, and offenses involving drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute a controlled substance) and 846 (conspiracy to distribute and possess with intent to distribute a controlled substance).

The 103-gang members utilize social media and direct messaging to identify themselves and to communicate, including for discussing and planning gang-related violence and other crimes. 103-gang members are expected to violently protect the name, reputation, status, and territory of the gang from rival gangs, primarily the Young Scott Block ("YSB-gang"). Additionally, 103-gang member's assist each other in committing violent crimes by sharing weapons, obtaining stolen cars, and when arrested, providing funds for bond, attorney fees and commissary accounts. Participation in criminal activity by a member and associate, particularly violent acts directed at rival gangs or as directed by gang leadership, increases the respect accorded to that member or associate, or results in membership, maintenance, and increased position in the gang, and opens the door to promotion to a leadership position.

### October 16, 2017 Murder

Defendant was a member of 103-gang and was known by the gang monikers of "Troy," Red" and "2-3." On October 16, 2017, Defendant with other members of 103-gang murdered S.J. in retaliation for a gang-related shooting against 103-gang that occurred previously. Co-defendant and fellow 103-gang member, Shaquille Richards, ordered that 103-gang members retaliate against the YSB-gang, who was believed to have done the prior shooting against the 103-gang.

8

Defendant's purpose in committing the murder of S.J. was, at least in part, because it was expected of him by virtue of his association and membership in 103-gang and/or to maintain or increase his position in the Enterprise.

At approximately 1:15 p.m. CT, four subjects including Defendant, Watson, Christopher, and Erskin, all members or associates of the 103-gang, traveling in a stolen 2007 Mazda CX7, committed a drive-by shooting in the 6800 block of London Street, Houston, Texas. W.F., a rival YSB-gang member, and S.J., who was not affiliated with any gang, were both shot. While the injuries to W.F. were non-fatal, S.J. sustained multiple gunshot wounds to his torso and died at the scene.

The Defendant fled the shooting scene on foot discarding a jacket and gloves as he ran to a nearby gas station. Police arrived and encountered the Defendant who initially told officers that he was kidnapped, but later claimed he had been robbed and shot at. Defendant agreed to voluntarily go to the police station to give a statement and was transported and interviewed as a possible witness. Upon revieing the evidence, law enforcement determined the Defendant was a subject and he was placed under attest and his cellphone was seized. Law enforcement reviewed video surveillance from a nearby hotel which depicts a subject matching Defendant's description throw a handgun along the road near the murder scene. Recovered from that area was a Glock model 17 9mm handgun, serial number GAT064, with an extended clip. DNA analysis confirmed that Defendant's DNA was found in the discarded gloves, black jacket, the Glock-17 with a high-capacity magazine, and the ammunition from that magazine that were recovered by HPD on the day of the murder.

A search warrant was obtained for the Instagram account of the Defendant with user

identification "omb_slimeshitt5." The account contained a video of the Defendant with a pistol and magazine similar to the Glock 17 recovered at the murder scene. Additionally, law enforcement located a photo of the Defendant wearing a red and black backpack similar to the one recovered at the murder scene. Lastly, law enforcement observed numerous pictures of the Defendant displaying hand signs associated with the 103-gang.

A search warrant was obtained for Defendant's cellphone that was seized when he was arrested. A review of Defendant's call log showed that he was in contact with codefendants Watson and Christopher prior to the murder and that immediately after the murder he attempted to call Christopher several times. The logs also show Defendant called 911 twice at approximately 1:30 p.m. CT. In Defendant's cell phone, among other things, law enforcement recovered a photograph of a Glock 17 with an extended magazine which appeared to be the same weapon recovered at the scene – a Glock 17 9mm with a 50-round magazine. Ballistics evidence confirms that the .9mm shell casings found at the murder scene were fired from the Glock-17.

### Prison Contraband

On December 25, 2023, while the Defendant was incarcerated at the Federal Detention Center in Houston, pending trial, staff observed an attempted introduction of contraband in the visitation room. While conducting a search of Defendant, staff recovered six sheets of 8½" x 11" white paper which appeared to be soaked in an unknown substance. Further testing of the paper with TruNarc yielded an "inconclusive" reading. At the time of the visual search, Defendant had just concluded a social visit with his wife and minor child. Defendant was subsequently placed in the Special Housing Unit and subsequently interviewed. Defendant admitted to instructing his wife to bring him in papers soaked with a combination of wasp spray and drain cleaner.

Defendant further admitted this was the second time he had introduced contraband into the institution and stated he owed other inmates money. Defendant admitted to officers he was a member of the 59 Bounty Hunter Bloods and was previously a Tree Top Piru gang member. Both are 103-gang cliques.

All of the above facts occurred within the Southern District of Texas.

### Breach of Plea Agreement

15.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Monetary Penalties, Assets and Financial Disclosures

16.   Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to Defendant may be applied to federal debts.

17.   Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass

11

clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines.   Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

### Forfeiture

18.   As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation.

(b) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

### Financial Statement

19.   Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this plea agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

20.   Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns.   Defendant

agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

### Complete Agreement

21.    This written plea agreement, consisting of seventeen pages, including the attached addendum of Defendant and Defendant's counsel, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.    This agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant.    No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties.    Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

22.    Any modification of this plea agreement must be in writing and signed by all parties.

Filed at __Houston__, Texas, on ___November   6___, 2024.

_____
Defendant

Subscribed and sworn to before me on ___November  6___, 2024.

NATHAN KYLE OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By:    _____
Deputy United States District Clerk

13

APPROVED:

      Alamdar S. Hamdani
      United States Attorney

By:    _____

      Kelly Zenon-Matos
      Assistant United States Attorney
      Southern District of Texas

      _____

      Jodi Anton
      Trial Attorney
      Violent Crime and Racketeering Section
      Department of Justice

      _____
      Windi Pastorini, Esq.
      Attorney for Defendant Mertroy Harris

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:23-cr-105 |
| | § | |
| MERTROY HARRIS, | § | |
| | § | |
| | § | |
| | § | |
| Defendant. | § | |

PLEA AGREEMENT – ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          _____11_/6_/24_____
Windi Pastorini, Esq.                Date
Attorney for Defendant Damarcus Williams

15

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me.    My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case.    I have read and carefully reviewed every part of this plea agreement with my attorney.    I understand this agreement and I voluntarily agree to its terms.

_____
Mertroy Harris

_____
Date

16